**In re David W. WATSON, Debtor.**

**Bankruptcy No. 95–31148.**

United States Bankruptcy Court,
D. Nevada.

Feb. 13, 1996.

William M. O'Mara, Reno, NV, for Debtor David W. Watson.

William A. Van Meter, Reno, NV, for Trustee James S. Proctor.

C. Robert Collins, Phoenix, AR, for Suzanne Nebeker.

*OPINION, DECISION AND ORDERS RE CONTESTED MOTIONS HEARD JANUARY 12, 1996*

BERT M. GOLDWATER, Bankruptcy Judge.

In this chapter 7 case on January 6, 1996 the following matters came before the court and will be hereafter dealt with seriatim:

I.    Motion (oral) to change venue of Adversary case BK–N–95–3100 (Suzanne Nebeker v. David W. Watson.);

II.   Motion to Declare Utah State Divorce Decree Valid;

III.  Trustee's Objection to Debtor's Claim of Exemptions (IRA and Pension Plan).; and

IV.   Motion to Lift Stay.

### I.

■ Suzanne Nebeker, Debtor's former wife, moved to change the venue of this case to Utah. At the hearing that motion was withdrawn but an oral motion was made to "amend" the withdrawn motion to change the venue to Utah of an adversary case filed by Suzanne Nebeker in this court. The oral motion is addressed to an adversary proceeding but not made in that proceeding. It must be made in the adversary proceeding in writing. Fed.R.Bank.P. 9013.

### II.

■ The motion of Suzanne Nebeker to declare the Utah decree of divorce valid and binding is granted. The facts are that on July 6, 1995 a Supplemental Decree of divorce [1] was signed by a Utah District Court Judge and made effective as of the trial date of April 11 and 12, 1995. This chapter 7 bankruptcy was filed July 7, 1995. The signed decree was not filed with the Clerk of the Utah District Court until July 11, 1995.

It is contended that the decree was not final until docketed by the Clerk under Utah Rules of Civil Procedure 58A(b) which provides in pertinent part:

"... all judgments shall be signed by the judge and filed with the clerk ..."

The filing of a judgment by the Clerk of the District Court in Utah was a purely administrative act and does not affect the validity of the decree on the date signed. On that date—July 6, 1995—there was a final determination by a court of what Debtor's estate would consist and such decree decided and decreed the estate of the Debtor prior to filing the bankruptcy petition the next day. *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522 (2nd Cir.1994) provides at 527:

While the commencement or continuation of a judicial action or proceeding clearly is subject to the automatic stay of section 362, we do not believe that the simple and "ministerial" act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1). *See Savers Fed. Sav. & Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co.),* 884 F.2d 145, 148 (4th Cir.1989) (noting that, while court must halt deliberations when bankruptcy intrudes, an arbitration award may be approved "as valid under the [automatic] stay only if the panel decided it in word and deed before [the petition date], leaving for post-petition achievement only the clerical act of recording the award"); *Teachers Inc. & Annuity Ass'n v. Butler,* 58 B.R. 1019, 1022 (S.D.N.Y.) (Rejecting argument that *entry* of judgment was "void and of no legal force or effect" on ground that filing of the signed judgment and entry on the docket by the clerk "was a purely ministerial act" that did not violate the automatic stay of § 362), *motion to stay granted in part and denied in part,* 803 F.2d 61 (2d Cir.1986). *See also Heikkila v. Carver (In re Carver),* 828 F.2d 463, 464 (8th Cir.1987) (rejecting debtor's claim that "routine certification" by clerk of court that debtor failed to redeem contract within redemption period was "judicial proceeding" within meaning of § 362).

The Utah court made findings of fact and conclusions of law on May 26, 1995 and signed the Supplemental Decree on July 6, 1995.

---

1.  The parties were divorced by a divorce decree of January 4, 1995 but the issues of child support, alimony, division of property and debts were bifurcated for the April 11–12, 1995 trial.

In the Utah case of *Rogers v. Rogers,* 671 P.2d 160 (1983) there was no final judgment signed by the judge, only an order showing intention to enter a judgment. In *Rogers* the bankruptcy was filed August 4, 1980. Prior to bankruptcy the court had made a memorandum decision. After bankruptcy property issues were tried on October 9, 1980 with findings of fact, conclusion of law and decree of divorce on November 7, 1980. So, too, in *In re Willard,* 15 B.R. 898 (9th Cir. BAP 1981) an Intended Decision of the divorce judge was ineffective as against the automatic stay where the judgment itself was not entered until after bankruptcy had been filed.

Here, there was a final judgment prior to the filing of the bankruptcy. See *In re Capgro Leasing Associates,* 169 B.R. 305 (Bankr. E.D.N.Y.1994) holding that entry of judgment will constitute a "ministerial act" requiring no violation of the automatic stay where the judicial function has been completed and the clerk has merely to perform the rote function of entering the judgment on the court's docket. Debtors' reliance on *In the Matter of Levine,* 84 B.R. 22 (Bankr.S.D.N.Y. 1988) is misplaced. There the bankruptcy court, noting that it had jurisdiction over property of the estate which superseded the state court in a pending matrimonial action, granted non-debtor's motion to lift the stay so that rights of the parties could be adjudicated by state court in the matrimonial action rather than in the bankruptcy court.

■ In the case at bar the property rights of the Debtor were adjudicated before the Debtor's filing. The trustee argues that the Utah divorce decree constitutes a preference under 11 U.S.C. § 547 as an award within the time limit of that section. Primarily, Section 547(c)(7) prohibits the trustee from avoiding as a preference any transfer of debt to a spouse in connection with a divorce decree in accordance with state law determination. Secondly, the Utah decree was not a transfer of property between debtor and his former wife; it is a division of marital property giving the wife her ownership share of property of the marriage. Unlike community property which must be part of the bankruptcy estate regardless of the fact that only one member of the community has filed (11 U.S.C. § 541(a)(2)) it is solely the legal and equitable interests of the debtor which must be part of this estate. In a community property estate the non-filing spouse also receives a discharge pursuant to 11 U.S.C. § 524(a)(3). See *Norwest v. Lawver,* 109 Nev. 242, 849 P.2d 324 (1993). But here Suzanne Nebeker will not receive a discharge from any joint or separate liability which creditors may have against her with or without exhausting their claims against debtor or debtor's estate. Property awarded to Suzanne Nebeker is her own and should she suffer creditors' claims she may have a right over against debtor or the estate in bankruptcy according to the specific orders of the divorce decree, but the interest of the debtor has been defined and there is no jurisdiction in the bankruptcy court over separate property of a non-debtor spouse. Non-bankruptcy law determines the nature and extent of the Debtor's interest in property. *Butner v. United States,* 440 U.S. 48 at 54–55, 99 S.Ct. 914 at 917–18, 59 L.Ed.2d 136 (1979).

### III.

■ Debtor is a medical doctor who specialized in anesthesiology in the State of Utah. Pursuant to Utah's Professional Act (Chap. 11, Section 16–11–2) he incorporated as a professional corporation in Utah June 18, 1980, named David W. Watson, M.D., P.C. (Professional Corporation). The professional corporation adopted a Profit Sharing Plan and Trust Agreement effective September 6, 1985. In 1987 Debtor entered into a medical partnership with Dr. Clisto D. Beaty, M.D. to operate a clinic with four certified registered nurses (CRNAs). The partnership employed four CRNAs from 1987 until 1992 when each of the CRNAs incorporated under Utah law. The respective pension plans of Debtor and Dr. Cristo continued but no employees were covered under Debtor's plan except Debtor himself.

Due to a conflict among the circuits as to the interpretation of 11 U.S.C. § 541(c)(2) the Supreme Court decided *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119

L.Ed.2d 519 (1992)[2] holding that Section 541(c)(2) is an exception to the property of the bankruptcy estate in Section 541(a) of the Code and that an "ERISA qualified" plan is not part of a debtor's estate in bankruptcy under Section 541(c)(2). Unfortunately, the Supreme Court did not specify the elements necessary for a hard and fast definition of "ERISA qualified" plan. Hence, post-*Patterson* there have been two lines of cases in the bankruptcy courts attempting to define when retirement plans are or are not part of the bankruptcy estate. One line of cases follows *In re Hall*, 151 B.R. 412 (Bankr.D.Mich.1993) holding an "ERISA qualified" plan must:

1. Be tax qualified by the IRS;

2. Include an antialienation provision; and

3. Be subject to ERISA.

The other line of cases follow the rule of *In re Hanes*, 162 B.R. 733 (Bankr.E.D.Va.1994) which provides an ERISA qualified plan is:

1. Governed by ERISA;

2. Includes a non-alienation provision; and

3. Is enforceable under ERISA.

The provision for non-alienation is always a requirement about which there is no controversy. Both the *Hall* and *Hanes* cases require that a qualified ERISA plan either be subject to or governed by ERISA. But, the reason for ERISA qualified plan is the tax relief which is the usual inducement. Tax deferral approved by the IRS as stated in *Hall* is necessary to the definition, but the provisions of IRC § 401 are solely for tax qualification under the Internal Revenue Code, and do not exclude the Debtor's Plan from being part of the estate of the Debtor. *In re Acosta*, 182 B.R. 561 (Bankr.C.D.Cal. 1994).

■ Plans which have no employees are not ERISA qualified despite non-alienation provision and qualification by the Internal Revenue Service because as stated in *In re Witwer*:

ERISA defines "participant" as a present or former employee of an employer.

29 U.S.C. § 1002(6) (1988). The Secretary of the Labor ("Secretary"), pursuant to authority granted in 29 U.S.C. § 1135 (1988),[5] has limited the definition of employee as follows:

*(b) Plans without Employees.* For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan as defined in paragraph (d) of this section ...

*(c) Employees.* For purposes of this section:

(1) An individual and his or her spouse shall *not* be deemed to be employees with respect to a trade or business, *whether incorporated or unincorporated*, which is wholly owned by the individual or by the individual and his or her spouse ...

29 C.F.R. § 2510.3–3(b), (c)(1) (1988) (emphasis added).

.　　.　　.　　.　　.

[5] 29 U.S.C. § 1135 provides in relevant part: "... [T]he Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter ..."

148 B.R. 930, 935 (Bankr.C.D.Cal.1992) (footnote in original).

Debtor's plan was created between David W. Watson, President of David W. Watson, M.D., P.C. and David W. Watson, Trustee. Bob de Ruyter, Senior Pension Administrator for Rocky Mountain Employee Benefits, Inc. states under oath:

Since the inception of the plan, all information provided to Rocky Mountain Employee Benefits, Inc. indicated that the employer sponsor of the David W. Watson, M.D., P.C. Profit Sharing Plan and Trust Agreement, David W. Watson, M.D., P.C., had no employees other than David W. Watson and that he is and has been, since

**2.** Prior to *Patterson* the 10th Circuit held an ERISA qualified plan was not part of the bankruptcy estate but made no determination whether or not the plan in that case was "qualified". See *In re Harline*, 950 F.2d 669 (10th Cir.1991).

the inception of the plan, the sole plan participant.

Hence, it is clear that this Plan is not ERISA qualified because when it is subject to ERISA or governed by ERISA it fails to meet ERISA definitions as made by the Secretary of Labor pursuant to the authority granted under 29 U.S.C. § 1135.

There remains questions of whether the plan is exempt as a self settled spendthrift trust. A true ERISA qualified plan with employees comes within 11 U.S.C. § 541(c)(2) and is excluded from the estate, but although ERISA immunity does not extend to non-qualified ERISA plans, other law may provide immunity.

■ When a plan is *not* ERISA qualified it is in fact and law the legal and equitable interest of the debtor. *In re Weeks*, 106 B.R. 257 (Bankr.E.D.Okla.1989); *In re Witwer*, 148 B.R. 930 (Bankr.C.D.Cal.1992).

In the latter situation the ERISA preemption does not apply. The Utah case of *In re Martin*, 115 B.R. 311 (Bankr.D.Utah 1990) recognizes this in dicta that a Utah case the exemption statutes of Utah might apply. Said the Utah bankruptcy court at *In re Chapin*, 323 of 155 B.R. (Bankr.W.D.N.Y. 1993):

> The court recognizes that if a debtor holds assets in a non-ERISA qualified plan, the state statute would not be preempted and the debtor may be able to protect those assets from the reach of creditors. This inconsistency over the disparate treatment of qualified versus nonqualified plans may be troubling, but other benefits of qualified plans balance the appearance of inconsistent treatment. It is not this court's inclination to harmonize the effect of this apparent inconsistency by improper statutory interpretation.

■ It is now established that notwithstanding the failure of a plan to be ERISA qualified, such plan may be excluded from the debtor's estate if exempt under applicable state exemption law. Utah law Section 78–23–5 provides in part:

(1) An individual is entitled to exemption of the following property:

.  .  .  .  .

(j) any money or other assets payable to the individual as a participant or beneficiary from or an interest of the individual as a participant or beneficiary in a retirement plan or arrangement which is described in Section 401(a), 401(h), 401(k), 403(a), 403(b), 409, 414(d), or 414(e) of the United States Internal Revenue Code of 1986, as amended. This exemption shall not apply:

(I) to an alternate payee under a qualified domestic relations order, as those terms are defined in Section 414(p) of the United States Internal Revenue Code of 1986, as amended.

■ Debtor's plan was approved by the IRS as a plan described in Internal Revenue Regulations 1.401(a)(4)–(1)(b)(2) on "the basis of a design-based safe harbor" described in the regulations. Thus, in Utah plan assets are exempt from bankruptcy but subject always to a "QDRO" (qualified domestic relations order). Both ERISA (29 U.S.C. § 1056(d)(1)) and the Utah exemption statute provide for QDROs.

The anomalous and incongruous situation in self-settled trusts both in Nevada and Utah is that (a) the assets of such trusts or plans are not spendthrift safe from creditors, but (b) a pension trust qualified by the Internal Revenue Service receives exemption consideration in both states although not a spendthrift trust in the true sense.

In Nevada, a self-settled trust or plan creating a pension plan for sole shareholder "employee" corporation is not a true spendthrift trust and would not be excluded from the bankruptcy estate. *In re Shuman*, 78 B.R. 254 (9th Cir. BAP 1987). In Utah it was held in *Leach v. Anderson*, 535 P.2d 1241 (Utah 1975) that the debtor cannot be both settlor and beneficiary of a spendthrift trust.

Yet in both Nevada and Utah the nature or character of the pension plan, whether a true spendthrift trust or a self-settled trust, is ignored in the exemption laws of both states. In Nevada NRS 21.090 1.(q)(4) exempts in part a trust forming part of a

pension plan qualified pursuant to sections 401 et seq. of the Internal Revenue Code. In Utah the exemption applies to all money or assets of a beneficiary in a retirement plan described in the Internal Revenue Code. Utah Code Ann. Sec. 78–23–5(1)(j). The application of Utah and Nevada exemption statutes thus turn on the tax qualification of the pension plan.

Debtor's plan created June 8, 1980, effective September 6, 1985, was given a favorable determination by the Internal Revenue Service on at least two occasions.

In the recent case of *In re Kaplan,* 189 B.R. 882 (E.D.Pa.1995), the issue was whether a pension plan was exempt under Pennsylvania law although failing to qualify under ERISA for the reason that the debtor was not an employee in the same manner and form that the debtor here is not an employee and his pension plan cannot be ERISA qualified. The court did find the plan qualified under the Pennsylvania exemption statutes because the statute exempted funds qualified under the Internal Revenue Code. In that respect the court deferred to the determination made by the IRS and held the plan was indeed qualified for the state exemption. This court will follow that case in deferring to the IRS.

■ As to the Individual Retirement Account, Nevada includes such accounts in its exemption statute, at least to a total of $100,000 with other exemptions. See NRS 21.990 1.(q). In Utah an IRA is not exempt under Utah Annotated Statutes. See *In re Swenson,* 130 B.R. 99 (Bankr.D.Utah 1991).

■ It is thus settled that there is an exempt status to debtor's pension plan but the law of Nevada should control. While the situs of the plan is Utah and the construction of its terms is administered under Utah law it is the Bankruptcy Code which determines the place of exemptions. In his bankruptcy schedules debtor claims the Nevada exemption applies to some items but refers to no law as to his pension plan, but in his briefs and arguments in opposition to the trustee's objections, the debtor claims Utah exemptions should apply because the trust situs is Utah and it is to be construed and enforced

according to the Act (ERISA). Section 9.3 of the Plan states:

This Plan and Trust shall be construed and enforced according to the Act and the laws of the States of Utah, other than its laws respecting choice of law, to the extent not preempted by the Act.

The plan is not ERISA qualified, supra, and Section 522 of the Bankruptcy Code controls. Debtor claims his domicile is Nevada and signed schedules that he had lived in Nevada for more than 180 days. He thus falls squarely under the provision of 11 U.S.C. § 522(b)(2)(A). Debtor may only use Nevada exemptions; he cannot use Nevada for some things and Utah for his pension plan.

To construe is to place a meaning and to analyze words and sentences; to enforce is to carry out the terms of the plan. Debtor has chosen his place of domicile to be Nevada, and filed his bankruptcy petition in this state. He is thereby bound by Nevada's exemption laws as the applicable state law under the Code.

Debtor's plan provides for the ERISA QDRO (qualified domestic relations order) in section 6.12 on page 52 of the plan which "shall have the meaning set forth under Code Section 414(p)." The reference can only be to the Internal Revenue Code, 26 U.S.C. § 414(p) which defines a QDRO.

### IV.

■ The stay should be vacated to permit the former spouse to proceed as she may be advised to obtain a QDRO and certain matters provided in the divorce decree. Also the stay is vacated nunc pro tunc retroactively to July 7, 1995 as to the filing of the judgment. See *In re Kissinger,* 72 F.3d 107 (9th Cir.1995) holding that the bankruptcy court has the discretion to grant retroactive relief from the stay in extreme circumstances and its discretion was not abused when the filing of bankruptcy would lead to a nonsensical result. The failure here to obey the stay was due to the Utah state judge or state clerk of the court and not a creditor.

**Now, therefore, good cause appearing, IT IS ORDERED THAT:**

1. The oral motion to amend the withdrawn motion to change the venue of the adversary action is denied.

2. The motion to declare the Utah decree of divorce valid is granted and the decree is entitled to full faith and credit in this court.

3. The Trustee's objection to Debtor's claim of exemption of his IRA and his Utah profit sharing plan is denied; the profit sharing plan and IRA are exempt under Nevada law to the extent of a total of $100,000.

4. The automatic stay is vacated retroactively as to filing of the signed Utah divorce decree with the Clerk of the Utah Court after the filing of this case.

5. The automatic stay is vacated so as to permit the former spouse, Suzanne Nebeker, to obtain a QDRO as she may be advised.

6. The Debtor shall amend his Schedules to conform with this Order and the award of property to Suzanne Nebeker under the Utah decree of divorce.

7. Trustee and the former spouse of the Debtor shall divide the property as ordered by the Utah decree of divorce.

8. The motion of Suzanne Nebeker to vacate the automatic stay is granted as to her right to collect her one-half of moneys held in trust by Debtor's lawyers in the divorce case, one-half of the money held by Provo Abstract and to resolve the division of personal property under the Utah divorce decree.

9. The IRA and the profit sharing pension plan are property of this estate subject to the distributions of the Nevada exemption to debtor, or any sum by QDRO to Suzanne Nebeker. All amounts distributed shall be prorated as to principal and deferred appreciations having any tax burden so that each (the debtor, the former wife and the trustee) shall bear a fair and prorated tax, if any be assessed or due, on any distribution to each pursuant to this order making the pension plan and IRA a part of this estate subject to the exemption statutes and any QDRO.