**In re Fred LOWENSCHUSS, Debtor.**

**Bankruptcy No. BK–N 92–31474–GWZ.**

United States Bankruptcy Court,
D. Nevada.

Nov. 1, 1996.

# 306

Bruce T. Beesley and Bridget Robb Peck, Reno, NV, Tom P. Monteverde, Philadelphia, PA, for creditor Beverly Selnick.

Alan R. Smith, Reno, NV, for debtor Fred Lowenschuss.

## MEMORANDUM DECISION AND ORDER

GREGG ZIVE, Bankruptcy Judge.

This matter came on regularly for a hearing before Gregg W. Zive, U.S. Bankruptcy Judge, on remand from an order entered August 19, 1994, by U.S. District Court Judge Edward C. Reed ("Remand Order"). The Remand Order vacated the bankruptcy court's order of July 21, 1993 ("Exclusion Order") regarding the exclusion of the Fred Lowenschuss Associates Attorney at Law Pension and Profit Sharing Plan ("Pension Plan") from the estate of the debtor.

Appearing on behalf of creditor Beverly Selnick ("Selnick") were Bruce T. Beesley, Esq. and Bridget Robb Peck, Esq. of Beesley & Peck, Ltd. and Tom P. Monteverde, Esq. of Monteverde & Hemphill. Debtor Fred Lowenschuss ("Lowenschuss") appeared personally and through his attorney Alan Smith, Esq. of Smith & Cope.

Lowenschuss filed his Chapter 11 petition on August 24, 1992. In his schedules, Lowenschuss listed his interest in the Pension Plan as "exempt and excluded as property of the estate *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); 11 U.S.C. § 522(b)(2)." Lowenschuss' ex-wife, Selnick, filed a timely objection to the exclusion or exemption of the Pension Plan.

Now retired U.S. Bankruptcy Judge James H. Thompson's Exclusion Order denied Selnick's Amended Objection to Exemptions, ruling that the Pension Plan was qualified under ERISA and excluded from the bankruptcy estate. Selnick appealed. Pursuant to the Remand Order, Judge Reed vacated the bankruptcy court's decision re-

garding the exemption or exclusion of the Pension Plan and directed the bankruptcy court to "convene and conclude the taking of [additional] testimony" regarding the application of the doctrine of *res judicata* and the exclusion/exemption of the Pension Plan assets.

As a result of Judge Thompson's retirement, this court determined it was necessary to hear all of the evidence pertaining to the foregoing matters in order to comply with the Remand Order and to resolve the exclusion/exemption issue. This court, having heard, read and considered the oral and documentary evidence adduced by the parties at the subsequent hearings in this matter; having read and considered the transcripts of prior judicial proceedings and depositions as well as documentary evidence that was admitted in accord with the Remand Order; having reviewed and considered all the pleadings, records and files in this matter, including the orders from appellate courts pertaining to prior bankruptcy court orders; having considered the demeanor and the credibility of witnesses; and having heard, read and considered the written and oral arguments and authorities submitted on behalf of the parties, is fully advised in the premises and makes the following Memorandum Decision and Order.

## FACTUAL BACKGROUND [1]

### The Divorce Proceedings

After ten years of contentious litigation, on July 10, 1991, in the Court of Common Pleas of Montgomery County, Pennsylvania, Case No. 81–17813, *Beverly Lowenschuss vs. Fred Lowenschuss*, Judge Albert R. Subers entered an Order and an Opinion ("Divorce Decree") divorcing the parties and equitably distributing the marital estate as follows:

A. To Plaintiff, Beverly Lowenschuss:

1) Colton Road contents which she possesses:  $ 25,000

---

1. Because of the long, torturous history of this case and the attempts of all the parties to resolve their differences in piecemeal litigation and endless appeals throughout the United States in both state and federal courts, a detailed rendition of the facts is necessary. While the court will at-

tempt to be as complete as possible detailing the facts as adduced at trial, the omission of any reference to any discrete fact, occurrence or exhibit should not be interpreted as meaning the court did not consider or weigh that evidence.

2) Cash equivalent of [Lowenschuss'] H.R. 10 Plan plus interest: $ 14,800

3) The Equity in the Colton Road, Gladwynne Pa.—former marital residence: $ 470,000

4) The value of the Diverted Assets plus interest at 6% to 7/1/91 $ 830,000 / $ 464,800

5) The fair rental value of Colton Road: $ 292,500 plus interest at 6%: $ 17,500

6) Thirty-eight and 7/10 (38.7%) percent of the value of [Lowenschuss'] Pension Benefit at Fred Lowenschuss Attorney at Law Pension and Profit Sharing Plan from inception to August, 1981 plus interest at 10% compounded annually* (emphasis added): $3,173,490

7) 50% of net value of Merchant's Bond (IN KIND)

$5,288,090

* [Selnick] shall pay any *penalty* imposed, if any by the Internal Revenue Service on this Portion. [Lowenschuss] shall pay any income tax, if any, imposed by Internal Revenue Service on this portion.

B. To Defendant, Fred Lowenschuss:

1) Funds transferred to Son. Larry plus interest: $ 275,700

2) Colton Road Contents: $ 70,000

3) Motor Vehicles: $ 6,000

4) 61.3% of the Pension and Profit Sharing Plan: $4,936,510

5) 50% net value of Merchant's Bond (IN KIND):

$5,288,210

In his Opinion, Judge Subers found as follows:

[T]his Court finds that the marital assets should be distributed on the basis of 50% to the Plaintiff and 50% to the Defendant. ... Our intention is to reduce the amount of her share of the Pension Benefit to the lowest possible amount by awarding the bulk of the other assets to [Selnick] ... Awarding all of these items then requires less "dependence" of [Selnick] on [Lowenschuss'] pension and profit sharing plan and reduces the percentage due her to 38.7% or $3,173,490.00. *This fund is managed completely by [Lowenschuss] and in view of his past conduct he would attempt in any way to minimize any monies due*

*to [Selnick]* from this fund if periodic payments were ordered. (emphasis added.)

Having ordered Lowenschuss to make the property distribution within three months, Judge Subers concluded as follows:

We further believe that in view of the extensive litigation which has gone on in this case for over nine (9) years, that [Selnick] should be in no way dependent upon future distributions from the pension plan of [Lowenschuss] particularly since [Lowenschuss] controls said plan. A clean break should be made so that [Selnick] is no longer dependent on the contentions, good will or bad will of [Lowenschuss] as the case may be and that both parties will no longer need any contact with the other and each can get on with her and his own lives.

Immediately following entry of the Divorce Decree, Lowenschuss began to transfer the assets of the Pension Plan out of Pennsylvania. On August 13, 1991, Lowenschuss made wire transfers of pension funds of eight million dollars from Provident National Bank in Philadelphia, Pennsylvania to Sunbank in Florida and Santa Barbara Bank & Trust in California.

Lowenschuss testified during the divorce proceedings that he was the sole participant in the Pension Plan. The federal Annual Reports for the Pension Plan filed by Lowenschuss prior to the divorce proceedings state that Lowenschuss was the only participant in the Pension Plan. As such, the Pension Plan assets are not shielded by ERISA from Lowenschuss' creditors and were subject to distribution by the Pennsylvania divorce judge.

On January 31, 1992, Lowenschuss failed to appear for an attachment hearing and a bench warrant was issued for his arrest. When Lowenschuss failed to appear at the February 10, 1992 hearing on Selnick's petition for contempt and enforcement of the Divorce Decree, Judge Subers issued a second bench warrant. Also, on the same day, Judge Subers signed an Order ("Freeze Order") freezing all of Lowenschuss' accounts. The Freeze Order provides as follows:

[A]ll assets, Bank accounts, Brokerage accounts, *Fred Lowenschuss Associate Pen-*

*sion Plan,* Fred Lowenschuss IRA or any other account, asset, trust or property subject to the control of Fred Lowenschuss *shall be frozen* and shall not be subject to transfer, withdrawal, assignment or expenditure under *any* circumstances, except upon further Order of Court. (emphasis added except '[A]ll' and '*any.*')

Lowenschuss appealed the Divorce Decree and filed a cross-motion to vacate the Freeze Order and all arrest orders. Selnick filed a Motion to Quash the Appeal based upon Lowenschuss' wilful contempt of court orders. On March 13, 1992, the Pennsylvania Superior Court granted Selnick's Motion to Quash Lowenschuss' appeal and denied Lowenschuss' cross-motion to vacate the Freeze Order and all arrest orders.

Also on March 13, 1992, Judge Subers granted Selnick's motion and entered a final judgment ("Judgment") in the divorce case. The Judgment established a legal basis for Selnick to commence domestication and execution proceedings to enforce the Divorce Decree and provided, in relevant part, as follows:

[J]udgment is entered in favor of [Selnick] and against Fred Lowenschuss and the *Fred Lowenschuss Associates, Attorneys at Law Pension and Profit Sharing Plan* in the amount of $5,345,090.00 plus interest computed at the rate of six percent (6%) per year beginning on October 10, 1991 on all unpaid distributions. (emphasis added.)

### Selnick's Pre–Petition Collection Proceedings

On May 11, 1992 Selnick filed a Petition to Enforce a Foreign Judgment in the District Court of Harris County, Texas. Shortly thereafter Selnick applied for a writ of garnishment to be issued to Zapata Corporation with respect to Zapata Corporation bonds owned by the Pension Plan. The writ was served on May 29, 1992.

Counsel for the Pension Plan sought to enjoin the enforcement of the Pennsylvania judgment and to dissolve the writ of garnishment on the grounds that (1) the Pension

Plan was not a party to the divorce petition, (2) that the Judgment was on appeal and (3) that the Pension Plan assets could not have been awarded to Selnick in the divorce case because the Pension Plan was subject to ERISA and, therefore, a Qualified Domestic Relations Order ("QDRO") was required and not obtained.

On August 6, 1992, the Texas District Court entered an order in favor of Selnick and held as follows:

After consideration of the evidence and arguments of counsel, the Court is of the opinion [Selnick] has heretofore secured a final judgment against [Lowenschuss] and the Fred Lowenschuss Associates, Attorneys at Law Pension and Profit Sharing Plan . . ., that the judgment is entitled to be accorded full faith and credit by this Court, and that such judgment remains due and unsatisfied."

### Selnick's Post–Petition Collection Proceedings

This Chapter 11 bankruptcy was commenced August 24, 1992. Judge Subers' fears that Lowenschuss would employ any method to frustrate Selnick's ability to enforce the Divorce Decree and Judgment were well-founded. When Lowenschuss filed his bankruptcy petition, he and Selnick were involved in execution proceedings pending in Pennsylvania, Minnesota, Texas, California, Florida, New York and New Jersey as Selnick attempted to locate and execute upon Pension Plan assets. Lowenschuss listed assets of $164,359 and liabilities of $9,126,-457.54 in his bankruptcy schedules. Selnick's claim is listed as an unsecured claim for $5,000,000, "disputed contingent and unliquidated."

Without applying to this court to lift the stay of 11 U.S.C. § 362[2], Selnick applied for and received an amended judgment in the Texas state court on September 16, 1992 and a Second Amended Judgment on October 26, 1992. The Second Amended Judgment provides in relevant part as follows:

---

**2.** Unless otherwise specified, all references to sections of the code shall refer to 11 U.S.C. 101

et seq. and rules references shall refer to the Federal Rules of Bankruptcy Procedure.

[Selnick] has heretofore secured a final judgment against *Judgment Debtor Fred Lowenschuss* and the Fred Lowenschuss Associates, Attorneys at Law Pension and Profit Sharing Plan in the amount of $5,345,090.00, plus interest and certain costs, ..., that the judgment is entitled to be accorded full faith and credit by this Court, and that such judgment remains due and unsatisfied. ... *Judgment Debtors Fred Lowenschuss* and the Fred Lowenschuss Associates, Attorneys at Law Pension and Profit Sharing Plan [shall] surrender to the Court the Debenture certificate held for the benefit of Fred Lowenschuss Associates, Attorneys at Law, Pension and Profit Sharing Plan. (emphasis added.)

## BANKRUPTCY PROCEEDINGS

### Exclusion/Exemption of Pension Plan Assets

The bankruptcy case was active. It was converted from a Chapter 11 reorganization to a Chapter 7 liquidation and then reconverted, on February 12, 1993, to a Chapter 11. There were numerous motions, adversary proceedings and contested matters regarding a variety of issues and creditors, including objections to creditor's claims and Selnick's objection to Lowenschuss' claimed exemption of the Pension Plan assets.

After extensive briefing and hearings, Judge Thompson ruled that Lowenschuss' claims of exclusion and exemption of the Pension Plan assets were not barred by *res judicata* arising from the 1991 Divorce Decree, the 1992 Pennsylvania Judgment or the 1992 Texas Judgment. Judge Thompson entered Findings of Fact, Conclusions of Law and Judgment regarding the exclusion/exemption issue on July 21, 1993 ("Exclusion Order"). The Exclusion Order denied Selnick's Amended Objection to Exemptions and concluded as follows:

1. That the terms of the Pension Plan in existence as of August 24, 1992, comply with the provisions of ERISA, and that the Pension Plan had at least one (1) common-law employee as of that date.

2. That Selnick has not met her burden of proof to demonstrate that the Pension

Plan has no common-law employees, or is otherwise not qualified under ERISA.

Selnick appealed the Exclusion Order to the United States District Court.

The Remand Order of August 19, 1994 vacated Judge Thompson's decision excluding the Pension Plan and remanded the matter to the bankruptcy court. The Remand Order instructed the bankruptcy court to consider additional evidence, including that specified by Judge Reed, and to resolve the issue of whether the Pension Plan should be excluded from the debtor's estate or whether it was exempt.

In the Remand Order, Judge Reed also directed the bankruptcy court to "permit Selnick leave to petition to the Pennsylvania Court to restate its Equitable Distribution order [Divorce Decree] as a QDRO." This court permitted Selnick to petition the Pennsylvania state court to modify the Divorce Decree to be restated as a QDRO. On January 22, 1996, Judge Subers refused to modify the Divorce Decree, concluding he no longer had jurisdiction to modify an order that was entered four and a half years earlier. Selnick appealed. On September 12, 1996, the Superior Court of Pennsylvania vacated and remanded to allow modification, holding that modification is "necessary to carry out the equitable distribution order and give the parties the benefits they were entitled to under the equitable distribution order." Opining on the exclusion/exemption issue, the Pennsylvania Superior Court found as follows:

> ... [A] plan is not governed by ERISA [and thus excluded from the bankruptcy estate] unless there is more than one participant. In Bankruptcy Court, [Lowenschuss] has claimed, contrary to his prior testimony in the divorce proceeding, that his two sons are also participants in the pension plan and it is therefore governed by ERISA.

The bankruptcy court's decision permitting Selnick to seek modification of the Divorce Decree restated as a QDRO was affirmed by Judge Reed on August 27, 1996.

### Lowenschuss's Plan of Reorganization

The Order Confirming Debtor's Plan of Reorganization ("Confirmation Order") was

entered October 28, 1993 [3]. The Plan of Reorganization was based upon Judge Thompson's decision that the Pension Plan was excluded from the debtor's estate.

Selnick appealed the Confirmation Order. Selnick's appeal of the Confirmation Order was reassigned to Judge Reed so that it could be considered together with her appeal of the Exclusion Order. Lowenschuss sought dismissal of Selnick's Confirmation Order and Exclusion Order appeals, contending the appeals were moot. Judge Reed denied Lowenschuss' motions to dismiss and stated in his April 28, 1994 order as follows:

> [Selnick] is the only significant creditor in this matter and not even 3% of the payments due her under the Plan have been made.
>
> .    .    .    .    .
>
> The plan or [sic] reorganization has not been substantially consummated. Nor has any event occurred which would render it impossible for the bankruptcy Court to fashion appropriate relief in the event the Order on the Pension Exemption issue is reversed by this Court. To the contrary, in the event of reversal, Selnick and [Lowenschuss'] other creditors will have enforceable claims against the assets of the Pension fund which will greatly exceed what they have been paid to date. In addition, [Lowenschuss] knew at the time the reorganization plan was confirmed that Selnick had appealed the bankruptcy court's decision regarding the exemption issue and fully intended to appeal the confirmation. Under these circumstances, we conclude that this appeal is not moot.

On the same date Judge Reed's Remand Order was signed and filed, August 19, 1994, he also entered an minute order from Minutes of the Court of August 18, 1994. The minute order clarified the status of Selnick's appeal of the Confirmation Order by staying that appeal until the exclusion/exemption issue remanded to the bankruptcy court was resolved. Judge Reed opined, "the bankruptcy plan cannot be confirmed without the issue [exclusion/exemption] being resolved."

That ruling was consistent with the April 28, 1994 Order denying Lowenschuss' motion to dismiss the appeal of the Exclusion Order by finding the Plan of Reorganization was not substantially consummated and that the bankruptcy court could fashion appropriate relief if the Exclusion Order was reversed. In this Memorandum Decision and Order the bankruptcy court is fashioning appropriate relief as detailed below.

Judge Reed confirmed his position regarding the Plan of Reorganization in his order signed and entered August 27, 1996, that affirmed the bankruptcy court's decision allowing Selnick to seek a QDRO in Pennsylvania. Judge Reed rejected Lowenschuss' argument that there was a confirmed plan that precluded Selnick's actions in Pennsylvania "because the court ruled long ago that the plan could not be confirmed, and stayed proceedings with respect to it in order to allow the exemption issue to be resolved."

### LEGAL ANALYSIS

#### Res Judicata

■ "[R]es judicata 'ensures the finality of decisions.'" *Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1528–1529 (9th Cir.1985) (quoting *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). Under this theory, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

"Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen, supra* at 131, 99 S.Ct. at 2209 (citing *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940)). Res judicata

---

**3.** The Confirmation Order was corrected by Judge Thompson in an Order Withdrawing Erroneously Filed Order of Confirmation entered February 9, 1994. The correction is not pertinent to this Order and to reduce confusion, this court will refer to the October 28, 1993 order as the Confirmation Order.

(claim preclusion) bars relitigation of claims between the same parties if those claims were or could have been litigated. *In re Daley,* 776 F.2d 834 (9th Cir.1985) (quoting *Nevada v. United States,* 463 U.S. 110, 129–130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983)).

Res judicata should "be invoked only after careful inquiry." *Brown v. Felsen, supra* at 132, 99 S.Ct. at 2210. Res judicata "may govern grounds and defenses not previously litigated" thus blocking "unexplored paths that may lead to truth." *Id.* The Supreme Court opined that if careful inquiry reveals that neither the interests served by res judicata nor the policies of the Bankruptcy Act would be furthered by application of the doctrine, it should not be used. *Id.*

"Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. [Citations omitted.] If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those [used in the Bankruptcy Code], then collateral estoppel, in the absence of countervailing policy, would bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen, supra* at 139 n. 10, 99 S.Ct. at 2213 n. 10. "The doctrine of collateral estoppel (issue preclusion) is intended to limit the number of times a defendant may be forced to litigate the same claim or issue, and to promote efficiency in the judicial system by putting an end to litigation." *Peck v. Commissioner,* 904 F.2d 525, 527 (9th Cir.1990).

■ Under full faith and credit principles, *see* 28 U.S.C. § 1738, the collateral estoppel effect to be given a state court judgment in bankruptcy court litigation is determined by that state's law, not federal law. *In re McNallen,* 62 F.3d 619 (4th Cir.1995); *citing In re Bugna,* 33 F.3d 1054, 1057 (9th Cir. 1994).

It has not been argued that either the Divorce Decree or the Judgment are not final, valid Pennsylvania judgments and would not have res judicata and collateral estoppel effect in Pennsylvania. Those judgments have been appealed, tested and examined and then affirmed or domesticated on numerous occasions within the last five years. They are unquestionably final.

Likewise, the Texas Judgment is also a final judgment and would have preclusive effect. However, that judgment, as reflected in all orders leading to the final Second Amended Judgment of October 26, 1992, is grounded on the Pennsylvania Judgment. The Second Amended Texas Judgment states that Selnick had secured a final judgment against Lowenschuss in the amount of $5,345,090.00, plus interest and costs, that the Pennsylvania Judgment was properly authenticated and was "entitled to be accorded full faith and credit by this court, and that such judgment remains due and unsatisfied." See, *Wu v. Walnut Equipment. Leasing,* 909 S.W.2d 273, 277 (Tex.App.1995), *rev'd on other grounds, Walnut Equip. Leasing v. Wu,* 920 S.W.2d 285 (Tex.1996); *see, Harris v. Harris,* 403 S.W.2d 445, 447 (Tex.Civ.App. 1966). In sum, the Texas Judgment was merely a domestication of the Pennsylvania Judgment and, therefore, the claims and issues in the Pennsylvania Judgment are those that may be precluded from relitigation by utilization of res judicata or collateral estoppel.

■ While a close issue, this court finds that neither the doctrine of res judicata (claim preclusion) nor collateral estoppel (issue preclusion) bar Lowenschuss from contending in his bankruptcy case that his interest in the Pension Plan is either excluded or exempted from the bankruptcy estate. On June 15, 1992—nearly one year after the Divorce Decree, four months after the Freeze Order and three months after the Pennsylvania Judgment, the U.S. Supreme Court issued its opinion in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The Supreme Court, departing from what had been the generally accepted status of the law, held that a debtor's interest in an ERISA-qualified pension plan was excluded from the bankruptcy estate for the purposes of § 541(c)(2). That issue was not litigated in the 1991 divorce proceeding. It could not have been litigated because there was not a multi-participant

plan at the time of the divorce proceedings and because an exemption issue necessarily arises after judgment is entered. Of course, exemptions and property of the bankruptcy estate are determined as of the date the bankruptcy petition is filed (§ 522 and § 541(a)(1)) and Lowenschuss presented evidence of a purported change of circumstances regarding the Pension Plan that occurred after the state court judgments and before his bankruptcy filing date. Finally, the Pennsylvania Judgment and, necessarily, the Texas Judgment are money judgments and arguably did not involve Pension Plan exclusion/exemption issues.

Obviously the parties' divorce and related proceedings and this bankruptcy case have involved years of effort and hundreds of thousands of dollars in fees and costs. This court has reviewed and carefully considered all the evidence and while application of res judicata or collateral estoppel might be appropriate, those doctrines should only be invoked in a manner consistent with the public policy articulated by the Supreme Court in *Brown v. Felsen, supra.* This court finds that precluding Lowenschuss from litigating his contentions regarding the exclusion/exemption issue would not further the policies of the Bankruptcy Code. There are policies unique to the Bankruptcy Code in resolving exclusion and exemption issues. Declining to apply res judicata in this case, as was the result in *Brown v. Felsen, supra,* at 138, 99 S.Ct. at 2212–13, allows the bankruptcy court to resolve those questions which are now, for the first time, squarely at issue and are the type of questions Congress intended bankruptcy courts to resolve.

Finally, the result would be identical. As explained below, this court has determined that Lowenschuss' interest in the Pension Plan is not excluded for the purposes of § 541 and it is property of the estate and is subject to creditor's claims.

The same result would be obtained if the court did invoke the doctrines of res judicata or collateral estoppel. However, because of the policy concerns regarding those doctrines and the differences between the status of the

law and issues and claims before this court and those before the Pennsylvania court which led to the Pennsylvania and Texas judgments, a decision on the merits without precluding Lowenschuss from fully litigating his contentions, is appropriate.

### Exclusion of Lowenschuss' Interest in the Pension Plan

■ On June 15, 1992, three months after the entry of the Pennsylvania Judgment against Lowenschuss and the Pension Plan, the U.S. Supreme Court in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) held that a debtor's beneficial interest in an ERISA-qualified pension plan is excluded from the bankruptcy estate pursuant to § 541(c)(2). The *Shumate* decision resolved a split among the circuits and departed from the prior Ninth Circuit rule that ERISA qualification would not suffice to exclude a debtor's interest in the plan from the estate. *See In re Reed,* 985 F.2d 1026, 1027 (9th Cir.1993).

Two months after the *Shumate* decision, Lowenschuss had purportedly established residency in Nevada[4] and he filed his Chapter 11 petition on August 24, 1992.

"An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered through transfer and lien avoidance provisions." *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991); § 541(a)(1). The scope of § 541(a)(1) is broad and has been liberally construed by the courts. *See, United States v. Whiting Pools,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983).

Section 541(c)(2) is a narrow exception which provides as follows:

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

4. The exact status of Debtor's residence is unclear from the schedules, Lowenschuss lists no real property assets on Schedule A and no residential real property leases on Schedule G.

Lowenschuss argues that his interest in his Pension Plan is excluded because the Pension Plan is ERISA-qualified and the anti-alienation provision of ERISA, 29 U.S.C. § 1056(d)(1), prohibits a transfer of his interest in the Pension Plan assets to the bankruptcy estate.

The court finds that Lowenschuss has the burden of proof on the issue of exclusion under § 541(c)(2).

Debtors have the burden of proof to demonstrate by a preponderance of the evidence that their retirement plans contain enforceable anti-alienation restrictions that would permit them to be excluded from the bankruptcy estate under 541(c)(2).

*In re Switzer*, 146 B.R. 1 (Bankr.C.D.Cal. 1992) citing *In re Leimbach*, 99 B.R. 796, 798 (Bankr.S.D.Ohio 1989).

The evidence supports the allegations that Lowenschuss has engaged in unlawful transactions with the assets of the Pension Plan, that he made and repaid loans to himself and his children's trusts, that he commingled the assets of the Pension Plan with his professional operation, and that he has retroactively amended the Pension Plan post-petition in an attempt to insure that Pension Plan assets are excluded from his bankruptcy estate. Lowenschuss has provided the court with cases as authority for the proposition that his conduct is not fatal to qualification of the Pension Plan. *See, Lockheed Corp. v. Spink,* — U.S. ——, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (ability of employer to amend pension plan); *In re Baker*, 195 B.R. 386 (Bankr.N.D.Illinois 1996) (even after a fiduciary engages in inappropriate and, perhaps, prohibited transactions the entire plan is still subject to ERISA).

The *Baker* case is instructive. That court found that even though the debtor was responsible for loans from the plan to the debtor's children and to the debtor himself, and the loans were not made within the terms of the plan, the plan was still subject to ERISA. However in the *Baker* case there were "as many as eighteen participants in the Plan." Further, the *Baker* court cited *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991) for the following proposition:

The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the view of a reasonable person."

In *Kennedy*, the Ninth Circuit Court of Appeals agreed with the District Court for the Central District of California that "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." 952 F.2d at 264. Even if the bankruptcy debtor had previously taken great care to insure that a pension plan was qualified for favorable treatment under the Internal Revenue Code, it has been repeatedly held that single participant plans are not ERISA-qualified. *In re Watson,* 192 B.R. 238, 242 (Bankr.D.Nev.1996); *In re Orkin,* 170 B.R. 751, 754 (Bankr.D.Mass.1994); *In re Hall,* 151 B.R. 412, 421 (Bankr.W.D.Mich. 1993), *In re Witwer,* 148 B.R. 930, 936 (Bankr.C.D.Cal.1992).

Since exclusion, exemption and valuation of property of the estate issues are determined at the commencement of the case, § 541(a); § 522(b)(2)(A) and *see e.g., In re Gitts*, 116 B.R. 174, 178 (9th Cir. BAP 1990) *aff'd,* 927 F.2d 1109 (9th Cir.1991), if the debtor is the sole participant in a plan at the time a bankruptcy case is filed, the plan cannot be excluded from the debtor's estate. The U.S. Supreme Court has described ERISA's goal as one of ensuring that a worker receives his or her pension benefits. *Patterson v. Shumate, supra,* at 764–765, 112 S.Ct. at 2249–50 (citing *Nachman Corp. v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980)). As noted in *Witwer, supra* at 935–936, ERISA "was adopted to remedy the abuses that existed in the handling and management of welfare and pension plan assets held in trust for workers in a traditional employer-employee relationship. [Citations omitted.] *Further, since the plan assets are held for the exclusive benefit of participants and beneficiaries, plan assets are not to inure to the benefit of the employer.* 29 U.S.C. § 1103(c)(1) (1988)." (emphasis added.)

If Lowenschuss was the only participant in the Pension Plan when he filed his bankrupt-

cy petition, the policies and goals of ERISA are not furthered by excluding the Pension Plan assets from the debtor's estate. Instead, the result would be to allow Lowenschuss to enjoy an inequitable windfall at his creditor's expense. Lowenschuss, therefore, has the burden to prove by a preponderance of the evidence that he was not the only employee who was a participant covered under the Pension Plan at the commencement of his bankruptcy case. He has failed to carry that burden. Illustratively, the evidence establishes the following:

1. That from November 1985, through November 30, 1990, all of Lowenschuss' Annual Reports as Trustee for the Pension Plan (Form 5500) stated that Lowenschuss was the sole participant in the Pension Plan;

2. Lowenschuss and his accountant both testified in the divorce proceedings in February 1991 that Lowenschuss was the sole participant in the Pension Plan;

3. The only documentary evidence of any type of employment by either Laurance or Edward Lowenschuss at Lowenschuss' law firm in 1990, 1991 and 1992 consisted of book entries, rather than canceled checks, for alleged payments to them of $2,000 and $360 respectively as wages in 1990; of $2,000 each for one weeks's work in October, 1991, and of $8,000 each post-petition in November, 1992;

4. All of the documentary evidence used to support Lowenschuss' contention that the Pension Plan was a multi-participant plan at the time the bankruptcy petition was filed, including five amended form 5500s for the years 1985–86 through 1989–90, and a federal income tax return of Fred Lowenschuss Associates for the fourth quarter 1992, had been created by or at the direction of Lowenschuss post-petition;

5. Contrary to his testimony before Judge Thompson, Edward had testified in the Pennsylvania proceedings that he was a college student who worked for his father only during the summers of 1990 and 1991 and not at all during 1992; he had never received payment for those services; that Laurance spent most of his time subsequent to January, 1991, in California rather than in Philadelphia, and that Edward had not seen nor heard from Laurance since the spring of 1992; and

6. There was no documentary evidence that either Laurance or Edward worked the 1,000 hours per year minimum required for Pension Plan participation and that no contributions whatever to the Pension Plan were ever made on behalf of either of them until December, 1992.

This court is convinced that Lowenschuss' sons were not participants in the Pension Plan and that it remained a single participant plan at the time Lowenschuss filed his bankruptcy petition. Despite Lowenschuss' efforts following entry of the Divorce Decree and Judgment to protect the Pension Plan from alienation, the Pension Plan did not satisfy ERISA requirements when this bankruptcy case was commenced and, therefore, it does not comport with the holding of *Patterson v. Shumate, supra,* and Lowenschuss' interest in the Pension Plan is not excluded from the bankruptcy estate.

Lowenschuss has little credibility. His belated attempts to change the Pension Plan from single to multi-participant are a sham. He controlled his sons. This court, as have other courts, finds that Lowenschuss and Edward have changed their testimony in a fruitless attempt to have the Pension Plan be considered ERISA-qualified. All Lowenschuss and his sons have proven is that they will take any convenient position to frustrate Selnick's search for Pension Plan assets to satisfy the Divorce Decree and Judgment, even if those positions are directly contrary to their earlier sworn testimony. They are not to be believed and the evidence they attempted to use to convince this court that the plan had multi-participants and that those participants were Lowenschuss' sons is not credible.

The only conclusion a reasonable person could draw from the years of endless litigation and voluminous evidence adduced at the cost of almost two million dollars in attorney's fees is that Lowenschuss has and will do or say whatever it takes to avoid his obligation to Selnick under the Divorce Decree and Judgment. Lowenschuss virtually closed his law practice in order to avoid the jurisdiction of the Pennsylvania courts. In

doing so, he did not keep the normal business and Pension Plan accounting and banking records to support his claims that he had a multi-participant plan. It is also not a coincidence that there was a change in the testimony of Lowenschuss and his sons and the creation of documentary evidence concerning the participation of the sons in the Pension Plan directly after the June 1992 *Shumate* decision. Lowenschuss has hidden assets, ignores or refuses to comply with orders and judgments from a variety of state and federal courts, and has patently attempted to manipulate the judicial system to avoid his long-established obligations.

In light of all the surrounding facts and circumstances this court finds that the Pension Plan is not ERISA-qualified and that Lowenschuss' interest in the Pension Plan assets is property of this bankruptcy estate.

### *Exemption of Lowenschuss' Interest in the Pension Plan*

■ Since Lowenschuss' interest in the Pension Plan is property of the estate, this court may decide the exemption issue. *In re Spirtos,* 992 F.2d 1004, 1007 (9th Cir.1993); *Owen v. Owen, supra.* Pursuant to § 522(b) Lowenschuss may claim as exempt certain property of the estate which he takes free and clear of any interest of the estate or claims of creditors. Section 522(b) provides as follows:

> Notwithstanding section 541 of this title, an individual debtor may exempt from property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. ... Such property is—
>
> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place *in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion*

*of such 180-day period than in any other place....* (emphasis added.)

Although Selnick and Lowenschuss stipulated during the evidentiary hearings that Pennsylvania law should be applied to determine the exemption issue under § 522, as held in *In re Watson,* 192 B.R. 238 (Bankr. D.Nev.1996) Nevada law will be applied to determine the exemption issue.

Selnick cited the case of *In re Kincaid,* 96 B.R. 1014, 1019, n. 1 (9th Cir. BAP 1989), *rev'd on other grounds,* 917 F.2d 1162 (9th Cir.1990), for the proposition that "exemption laws of the forum apply, even if they differ materially from exemption rights under the law of the place where the contract was made or to be performed or where the cause of action arose."

■ In *Watson,* recalled U.S. Bankruptcy Judge Bert M. Goldwater stated, "It is thus settled that there is an exempt status to debtor's pension plan but the law of Nevada would control. While the situs of the plan is Utah and the construction of its terms is administered under Utah law it is the Bankruptcy Code which determines the place of exemptions." 192 B.R. at 244. A debtor may not flee the jurisdiction of a state's domestic relations courts, set up residence and file bankruptcy in another state, and then claim the more liberal exemption law of the forum that he has escaped. Since the Debtor claimed his domicile was Nevada when he filed this case, he is bound by Nevada's exemption law under § 522(b)(2)(A).

### *APPOINTMENT OF A CHAPTER 11 TRUSTEE*

■ Section 1141 provides that upon confirmation of the plan, all property of the estate is revested in the reorganized debtor and the property dealt with in the plan is free and clear of all claims and interests of creditors. Except as provided in the confirmed plan, all pre-confirmation claims are discharged. A discharge voids any pre-confirmation judgment, "to the extent that such judgment is a determination of the personal liability of the debtor." § 524(a)(1). Also, a discharge operates as an injunction against

the continuation of any action to collect on a pre-confirmation claim which is "a personal liability of the debtor." § 524(a)(2).

Until entry of this Memorandum Decision and Order, the assets of the Pension Plan have not been property of the estate and were not dealt with in the plan; consequently those assets have not revested in the debtor and were not subject to the jurisdiction of this court. They are now. Creditors who have claims against the assets of the Pension Plan must file a proof of claim in this case and will be paid according to the provisions of the Bankruptcy Code. All actions against the assets of the Pension Plan are hereby stayed pursuant to § 362(a).

This court is aware of previous futile efforts by other courts to obtain control over the Pension Plan assets. On August 20, 1985, in reaction to Lowenschuss' commingling of the assets of the Pension Plan, his professional corporation and the children's trusts, Judge Subers assumed jurisdiction over Lowenschuss as Plan Administrator and Trustee of the Plan. Judge Subers enjoined Lowenschuss from withdrawing assets from the Pension Plan or making any distributions from the Plan. Lowenschuss subsequently conveyed all his assets except the stock in his professional corporation to trusts for his children and transferred more than two million dollars from the Pension Plan to himself as trustee for the children.

On August 13, 1991, one month after the July 10, 1991 Divorce Decree, Lowenschuss made wire transfers of Pension Plan funds totaling more than eight million dollars in an effort to prevent Pennsylvania courts from controlling his use of the funds. Finally, Judge Subers froze the assets of the Pension Plan on February 10, 1992.

In 1992 a second judge attempted to obtain control of the Pension Plan assets. New Jersey U.S. Bankruptcy Judge Rosemary Gambardella froze the assets of the Pension Plan in the Resorts International, Inc. bankruptcy case because she "could not ascertain the location of the money [Lowenschuss] received in exchange for the alleged illegal tendered Resorts stock, in order to enjoin the dissipation or transfer of the money." *In*

*re Lowenschuss,* 67 F.3d 1394, 1396 (9th Cir.1995).

Judge Thompson converted this case to a Chapter 7 on January 5, 1992 because of Lowenschuss' failure to abide by orders of the Nevada bankruptcy court.

This court froze the Pension Plan assets on November 27, 1995.

This court has no evidence that Lowenschuss has abided by any of those orders. Further, Lowenschuss has the power to effect a change in the trustee at any time, to terminate the Pension Plan at any time and to transfer virtually all of the assets to himself. There can be no doubt that is precisely what Lowenschuss will do if given the opportunity.

Based on the foregoing, this court has serious reservations about allowing Lowenschuss, or his son Laurance, the current hand-picked trustee of the Pension Plan, unfettered control over the Pension Plan assets of this bankruptcy estate.

**THEREFORE IT IS HEREBY ORDERED** that Selnick's October 13, 1995 Renewed Motion for Appointment of a Chapter 11 Trustee is **GRANTED** for the following reasons:

1) Pursuant to § 1104(a)(1) based on Lowenschuss's pre-petition transfers of funds and personal flight to Nevada to avoid jurisdiction of the Pennsylvania courts; and

2) Pursuant to § 1104(a)(2) because the Court believes it is in the best interests of creditors to have an independent, disinterested trustee to administer the estate and to pursue any unauthorized transfers of estate property by any person, entity or individual. Lowenschuss may be liable to the estate for unauthorized post-petition transfers of estate property. § 549(a); *Spirtos,* 992 F.2d at 1006.

**IT IS FURTHER ORDERED** that Lowenschuss shall submit to the Chapter 11 Trustee, the Assistant U.S. Trustee, and this court, no later than November 6, 1996 at 12:00 noon, 1) a complete list of the Pension Plan assets; 2) the location of all Pension Plan assets; and 3) the names, current addresses and telephone numbers of all persons

or entities in control of Pension Plan assets, including, but not limited to the current trustee of the Pension Plan.

**IT IS FURTHER ORDERED** that if Lowenschuss fails to comply with the terms of this Order, the case will be immediately converted to Chapter 7 and, additionally, failure to report as ordered will subject Lowenschuss to this court's contempt and sanction powers as provided by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and any other applicable authority. *See, e.g., In re Rainbow Magazine, Inc.,* 77 F.3d 278 (9th Cir.1996).

**IT IS FURTHER ORDERED** that the Nevada state exemption law will be determinative of the validity and amount of Lowenschuss' allowable exemptions under § 522 and that an evidentiary hearing will be set to determine that issue.