Jerome **SCHWARTZ**, as participant in Pension trust account number 2564–01 with First National Bank of Long Island, an employee benefit plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., Plaintiff-Appellant,

v.

David **GORDON**, Shearson Loeb Rhoades, Inc. and First National Bank of Long Island, Defendants-Appellees.

No. 817, Docket 84–7941.

United States Court of Appeals, Second Circuit.

Argued March 4, 1985.

Decided April 30, 1985.

David O. Simon, New York City (Daniel J. Kornstein, Kornstein Veisz & Wexler, New York City, of counsel), for plaintiff-appellant.

Theodore A. Krebsbach, New York City (Harry D. Frisch, Shearson Lehman/American Express Inc., Law Dept., New York City, of counsel), for defendant-appellee Shearson Loeb Rhoades Inc.

Arthur C. Schupbach, Garden City, N.Y. (Redmond & Pollio, P.C., Garden City, N.Y., of counsel), for defendant-appellee First Nat. Bank of Long Island.

Francis X. Lilly, Sol. of Labor, U.S. Dept. of Labor, Washington, D.C. (Robert N. Eccles, Acting Associate Solicitor, Louis L. Joseph, Counsel for Gen. Litigation, Karen L. Handorf, Attorney, U.S. Dept. of Labor, Washington, D.C., of counsel), for amicus curiae Secretary of Labor.

Before MANSFIELD, NEWMAN and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

 The principal question raised by this appeal is whether the fiduciary duties imposed by Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982), apply to a "Keogh" retirement plan maintained by a self-employed individual who is the sole contributor to and beneficiary of the account. We hold that they do not.

Dr. Jerome Schwartz, a self-employed physician, appeals from orders of the Southern District of New York, Richard Owen, J., granting summary judgment dismissing his action for damages against the First National Bank of Long Island (Bank), and granting a motion to dismiss his suit against Shearson Loeb Rhoades, Inc. (Shearson) and David Gordon, a stockbroker employed by Shearson. Schwartz alleged that all three defendants breached their fiduciary duties under ERISA in the management of his Keogh pension account

established by him for his own benefit upon retirement. The district court dismissed the claim against the Bank on the merits. Later, in dismissing the claim against the other defendants, it held that the account did not meet the definition of an "employee benefit plan" found in Title I of ERISA and that therefore the fiduciary duties imposed by Title I upon the managers of such plans did not apply. We agree and affirm.

The Self-Employed Individuals Tax Retirement Act of 1962, Pub.L. 87–792, 76 Stat. 809 (codified as amended in scattered sections of 26 U.S.C.), permits a self-employed individual to establish his own pension plan (commonly called a "Keogh" plan [1] after the name of the author of the bill) and to qualify for certain favorable tax benefits. *See* S.Rep. No. 992, 87th Cong., 2d Sess. 1, *reprinted in* 1962 U.S.Code Cong. & Ad.News 2964. From 1972 to 1980 Dr. Schwartz maintained with the Bank his own individual Keogh retirement account, to which he was the sole contributor and of which he was the sole beneficiary.[2] Under bank policy such accounts were classified as "directed investment" accounts, over which the Bank had no authority or discretion. The Bank's Keogh Master Plan stated that the Bank would not be responsible for reviewing the merit of investments acquired at the direction of the participant or his agent. The contributor indemnified the Bank from all liability except that for willful misconduct and authorized the Bank to rely in good faith on written authorizations from the contributor and his agents.

The Bank credited Schwartz with all contributions to the account, investments made through use of the contributions, and earnings from the investments. Schwartz authorized David Gordon, a broker employed by Shearson, to execute purchases and sales of securities for his Keogh account pursuant to authorization cards signed by Schwartz for each trade. In 1979 Gordon, allegedly acting without an authorization card from Schwartz, invested most of the account funds in high risk, "deep discount" bonds of poor standing, issued by Texfi Industries, Inc., which declined in value, resulting in a loss to the account of approximately $40,000.

According to Schwartz, upon learning of the ill-fated investment he complained to the defendants. In September 1980, he brought the present action, claiming that they violated fiduciary duties allegedly imposed upon them by ERISA, Title I of which requires the fiduciary of an "employee benefit plan" to discharge his duties with the care, skill and diligence of a prudent man acting under the same circumstances, 29 U.S.C. § 1104(a)(1)(B), and to diversify the plan's investments in order to minimize the risk of large losses, 29 U.S.C. § 1104(a)(1)(C).[3]

On January 7, 1983, the district court dismissed on the merits the claim against the Bank on the ground that, as Schwartz conceded, the Bank neither recommended the purchase of the Texfi bonds nor made any suggestions with respect to that transaction. Judge Owen found it to be undisputed that the Bank "acted solely in re-

---

1. Keogh plans are also sometimes referred to as "H.R. 10" plans after the number of the original House bill that eventually became law.

2. Schwartz' wife maintained a separate account in the same plan, but the assets in her account were wholly segregated from those in his, so that the gains or losses of each did not affect the other.

3. Title 29 U.S.C. §§ 1104(a)(1)(B) and (C) provide in pertinent part:
 "§ 1104. Fiduciary duties
 (a) Prudent man standard of care
 (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries and—
 \* \* \* \* \* \*
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
 (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; ....
 \* \* \* \* \* \* \*"

sponse to the orders given by Mr. Gordon and exercised no discretion in the investment of funds from the Schwartz account." On October 17, 1984, the district judge in a reasoned opinion concluded that the court lacked subject matter jurisdiction over the action for the reason that Schwartz' Keogh plan was not an "employee benefit plan" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), because Schwartz, as a self-employed individual, was not an "employee" within the meaning of Title I of the Act.[4] He therefore held that Schwartz was not entitled to enforce the fiduciary requirements of Title I of ERISA.

## DISCUSSION

Title I of ERISA, 29 U.S.C. §§ 1001–1461, which was enacted in 1974, applies only to an "employee benefit plan," 29 U.S.C. § 1003(a). It establishes federal "standards of conduct, responsibility, and obligation," 29 U.S.C. § 1001(b); see 29 U.S.C. §§ 1101–1114, that must be observed by the fiduciaries of such plans and violations of which are remediable in "Federal courts" and form the predicate of the present action. The statute authorizes the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions" of the Act, 29 U.S.C. § 1135.

The Act defines an "employee benefit plan" as "any plan ... established or maintained by an employer ... that ... (i) provides retirement income to *employees*, or (ii) results in a deferral of income by *employees* for periods extending to the termination of covered employment or beyond," 29 U.S.C. § 1002(2)(A) (emphasis supplied). The term "employee" is defined by the

statute as "any individual employed by an employer," 29 U.S.C. § 1002(6).

Dr. Schwartz argues that in the absence of an express exclusion of plans established by self-employed individuals like himself (and Title I does exclude certain types of retirement plans) such persons must be deemed "employees" and their retirement plans "employee retirement plans" covered by Title I. We disagree. In the first place, in 1975, one year after Title I was enacted, the Secretary of Labor promulgated regulations pursuant to Congress' express delegation of rule-making authority to him. 40 Fed.Reg. 34526 (Aug. 15, 1975). These regulations clarify the statutory definition of "employee benefit plan" in various respects and provide in pertinent part:

"(b) *Plans without employees.* For purposes of Title I of the Act and this chapter, the term 'employee benefit plan' shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan as defined in paragraph (d) of this section. *For example, a so-called 'Keogh' or 'H.R. 10' plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I.* However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals are participants covered under the plan, will be covered under Title I." (Emphasis supplied). 29 C.F.R. § 2510.3–3(b).

Supplementing this interpretation, the regulations exclude from the definition of "employee," "[a]n individual and his or her spouse" employed by a trade or business when one or both of them wholly owns the company. 29 C.F.R. § 2510.3–3(c)(1).[5]

**4.** When a claim allegedly based on a federal statute must be dismissed because of the statute's inapplicability to the facts alleged, the dismissal is sometimes described as jurisdictional. However, under *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946), when (as here) the complaint invokes federal jurisdiction to determine the statute's applicability, then, unless the question is insubstantial and frivolous, the dismissal is more accurately described as based on failure to state a claim upon

which relief may be granted. Since no pendent claims are alleged, the distinction has no practical significance in the present case. *See Nolan v. Meyer,* 520 F.2d 1276, 1278, 1280 (2d Cir.), cert. denied, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

**5.** Accordingly, the fact that Schwartz' wife had an account under the same Keogh plan would not suffice to bring the plan within the protections of ERISA Title I.

■ Absent evidence that a regulation issued by an agency pursuant to Congressional authority bears no reasonable relationship to the provisions of the statute being administered by the agency (in this case the Department of Labor) its interpretation of the statute is entitled to considerable deference. *Sure-Tan, Inc. v. National Labor Relations Board,* — U.S. —, —, 104 S.Ct. 2803, 2808, 81 L.Ed.2d 732 (1984); *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981). Since the agency is vested with policy-making power, it is authorized to fill in gaps that may have been left by Congress in a statute and we may not substitute our interpretation for that of the agency, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* — U.S. —, —, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984), so long as the agency's interpretation is "reasonably defensible." *Sure-Tan, Inc., supra,* — U.S. at —, 104 S.Ct. at 2808.

Dr. Schwartz' contention that the Secretary of Labor's regulation is "at odds with the statute, the legislative history and case law" must be rejected. On the contrary, the legislative history of Title I of ERISA, which appellant confuses with that of Title II, is plainly consistent with the regulation. Congress enacted the Self-Employed Individuals Tax Retirement Act of 1962 for the purpose of encouraging self-employed persons to establish their own individual "Keogh" or "H.R. 10" pension plans by offering them favorable tax benefits. Toward that purpose it shortly thereafter changed the definition of "employee" in the Internal Revenue Code to include a self-employed person. *See* 26 U.S.C. § 401(c). Title I, on the other hand, was adopted by Congress in 1974 for entirely different purposes, one of which was to remedy the abuses that existed in the handling and management of welfare and pension plan assets that constitute part of the fringe and retirement benefits held in trust for workers in traditional employer-employee relationships. *See* S.Rep. No. 127, 93d Cong., 1st Sess. 3–5, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4838,

4839–42. Workers in such traditional employer-employee relationships are more vulnerable than self-employed individuals to abuses because the workers usually lack the control and understanding required to manage pension funds created for their benefit and to establish adequate vesting, funding and participation standards. As a result, many employees who had been led by collective bargaining agreements to rely on future pension benefits as a form of deferred wages, *see id.,* suffered serious hardships when the promised funds largely evaporated as a result of mismanagement. *See, e.g.,* 119 Cong.Rec. 30003 (1973) (remarks of Sen. Williams); 120 Cong.Rec. 4279 (1974) (remarks of Congr. Brademas).

A self-employed individual who voluntarily decides to set aside a portion of his income for his own retirement, unlike a worker employed by another, has complete control over the amount, investment and form of the fund created by him for his retirement. The remedial scheme established by Title I for workers employed by others was therefore not necessary for the protection of self-employed persons, and Congress accordingly has not changed the definition of "employee" in that Title to include self-employed persons. The change of the definition in Title II, on the other hand, was necessary to make more equitable the *tax treatment* of plans set up by self-employed individuals compared to that of other plans. S.Rep. No. 383, 93d Cong., 1st Sess. 9, *reprinted in* 1974 U.S. Code Cong. & Ad.News 4890, 4897.

Thus the legislative history supports the distinction drawn by the Secretary of Labor between the definition of "employee benefit plan" as used in Title I for protection of workers employed by others and the definition of the term as used in Title II to insure tax benefits on an equal basis to self-employed individuals and others with respect to their retirement funds. Indeed, although the definition in Title I has been in effect and applied since 1975 and Congress has twice amended ERISA's definition sections, it has left the Title I definitions of employee and employee benefit

plans standing, thus adding weight to the Secretary's explicit construction of the terms. *Board of Governors v. First Lincolnwood Corp.*, 439 U.S. 234, 248, 99 S.Ct. 505, 513, 58 L.Ed.2d 484 (1978).

By excluding from the definition of an employee benefit plan only those plans with no employees, the Secretary's regulation implicitly leaves within the scope of Title I any plans that include both the retirement assets of the self-employed and the assets of their employees. Under some circumstances, the reasoning behind this approach is clear: when the assets of employees and a self-employed employer are commingled, for example, the only way to assure the needed protection for the former is to protect the latter as well. Under other circumstances, however, protection for the self-employed employer may seem unnecessary to guard the interests of employees, as when the assets of each are kept in wholly segregated accounts within a plan.

We cannot say, however, that the Department of Labor was unreasonable in its apparent decision to afford employers in the latter situation the protection of ERISA Title I. The line drawn by the Department of Labor regulation simply excludes from Title I coverage those plans, such as Schwartz', in which there are *no* employees and for which the fiduciary protections afforded by the Act are accordingly least important. That there may be another category of plans that should arguably be excluded does not weigh in favor of expanding the scope of the Act to take in the Schwartz plan.

The authorities relied upon by appellant are clearly distinguishable and not inconsistent with the foregoing analysis. For the most part his quotations from the legislative history deal with the equality of tax treatment to be accorded to self-employed individuals, not with efforts to cure abuses in the management of pension funds, which were incorporated in Title I. Neither *Goff v. Taylor*, 706 F.2d 574 (5th Cir.1983), nor *Samore v. Graham*, 726 F.2d 1268 (8th Cir.1984), involved the issue before us. In

*Goff* the question was whether a *tax-qualified* Keogh plan was exempted from the debtor's bankruptcy estate by reason of ERISA's anti-alienation provisions; the case did not raise the applicability of the fiduciary standards of Title I. Nor was the question raised in *Samore*, which also addressed the consequences in bankruptcy of ERISA's anti-alienation provisions and which in any event involved a pension plan established by a wholly-owned corporation for its employees, one of whom was *not* the owner.

■ Accordingly we hold that since the fiduciary provisions of Title I are inapplicable to Dr. Schwartz' claim, Judge Owen's dismissal of the suit must be affirmed. Nor may the claim be sustained on the ground that Shearson is estopped from denying the applicability of ERISA by having litigated the merits of Schwartz' allegations. Estoppel based on misrepresentations by the defendants here cannot extend the breadth of a federal statutory scheme and its accompanying jurisdictional grant beyond the borders selected by Congress. *Cf. Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951); *Mansfield, Coldwater & L.M.R. Co. v. Swan*, 111 U.S. 379, 384, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884).

■ Dr. Schwartz' request that if dismissal of his claim is affirmed he be permitted to amend his complaint to allege false representations and omissions of material facts in violation of the Securities Act of 1933, 15 U.S.C. §§ 77a–77bbbb, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78kk, must also be denied. The elements of claims under the securities laws may differ from those needed to prove a claim under Title I of ERISA and, as Judge Owen noted, there is no allegation of the essential element required by § 10(b) of the Exchange Act and § 17(a) of the Securities Act that the misrepresentations be made "in connection with" the purchase or sale of a security, *see Chemical Bank v.*

*Arthur Andersen & Co.,* 726 F.2d 930 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984). Since there is no showing of abuse of discretion on the part of the district court in denying leave to replead, its denial must be upheld.

Dr. Schwartz further argues that the district court erred in granting summary judgment dismissing his claim against the Bank on the ground that since Schwartz controlled his account the Bank was exempt under ERISA from liability for "any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(2). The evidence is undisputed that the absence of a specific authorization card referring to the ill-fated Texfi acquisition would not be significant because such cards are customarily furnished to the Bank by account-holders after trades are executed and because Schwartz routinely mailed to the Bank authorization cards signed by him in blank in order to enable the Bank to carry out Gordon's investment decisions. Without suggesting that the district court's decision was erroneous, because Schwartz' Keogh plan was not an "employee benefit plan" covered by Title I of ERISA, we need not determine whether the Bank was exempt from liability under that statute. Since we would in any event dismiss Schwartz' claim against the bank on the ground that ERISA was inapplicable, we affirm the district court's judgment, regardless whether the dismissal might otherwise have been affirmed on the exemption issue.

For the foregoing reasons the orders of the district court are affirmed.