In re David Warren WATSON, Debtor.

David Warren WATSON, Appellant,

v.

James PROCTOR, Chapter 7 Trustee; Central Bank; Suzanne Nebeker, Appellees.

BAP No. NV–96–1465–RRyV.

Bankruptcy No. 95–31148.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 13, 1997.

Decided Oct. 23, 1997.

William M. O'Mara, Reno, NV, for Appellant.

William A. Van Meter, Van Meter and Matteoni, Reno, NV, for Appellee.

Before: RUSSELL, RYAN, and VOLINN, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The debtor appeals the bankruptcy court's order which determined that his pension plan constituted property of the estate because it was not an ERISA-qualified plan. We AFFIRM.

### I. FACTS

David Warren Watson ("Watson"), the debtor who filed a chapter 7[1] case on July 7, 1995, was a participant in the David W. Watson, M.D., P.C. Profit Sharing Plan and Trust Agreement ("Plan"). The Plan was created on July 1, 1985 as a single-employer profit sharing plan. The Plan became effective on September 6, 1985 and upon signing, application for approval from the Internal Revenue Service was made. In 1986, the IRS approved the Plan under the Employee Retirement Income Security Act ("ERISA"). The Plan contained an anti-alienation provision, i.e., a restriction on the transfer of Watson's beneficial interest, as required by ERISA and the applicable provisions of the Internal Revenue Code.

All of the tax returns for the Plan through the plan year ending on December 31, 1994 reflected that the employer sponsor (David W. Watson, M.D., APC) had no employees other than Watson and he was the sole plan participant. Watson was the beneficiary of all contributions made to the Plan since its inception. Watson's bankruptcy schedules reflect that he received a loan from the Plan of approximately $45,000 and allegedly secured this loan with his Loafer Canyon home.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

Watson's bankruptcy schedules reflected that the loan has remained unpaid.

In 1987, Watson, through his medical corporation, entered into a partnership agreement with Clisto D. Beaty, M.D., P.C., to establish a pension plan for four certified registered nurse anesthetists (Watson–Beaty Anesthesia Co–Venture Pension Plan).

The joint venture plan was sent to the IRS as required by their equalization rule which provides for equal treatment between the owner of the corporation and its employees. The IRS sent Watson a letter indicating a favorable determination that the plan satisfied the nondiscriminatory current availability requirements of § 1.401(a)(4)–4(b) of the Internal Revenue Code with respect to the benefits, rights, and features that were currently available to all employees in the plan's coverage group.

Shortly after, the joint venture was dissolved. Employees of the now dissolved joint venture were subsequently covered by alternate pension plans which the employees had formed themselves. It is undisputed that all of the employees that were hired by the joint venture eventually established their own separate professional corporations and that their respective pension benefits derived from the business of the joint venture were ultimately rolled into separate independent pension plans.

During the pendency of his divorce proceeding, Watson took a voluntary leave of absence from the hospital where he practiced as an anesthesiologist, and eventually moved to Nevada from Utah, several months before his divorce was finalized. Watson filed his chapter 7 bankruptcy case on July 7, 1995, the same date that the final decree of divorce was filed in the Utah state court. At all times during this case, Watson has maintained that he is a Nevada resident.

The impact of the bankruptcy filing on the state court divorce decree was litigated in the bankruptcy court. The outcome of this litigation is set forth below and is not the subject of this appeal. Issues related to the divorce decree, however, do remain on appeal in the Utah state courts.

On Watson's Schedule "C," Property Claimed as Exempt, he listed as exempt his interest in the Plan as well as an interest in an Individual Retirement Account ("IRA"). Watson valued these assets at $290,000 and $6,000, respectively. Under applicable Nevada law, NRS 21.090(1)(q), Watson's exempt interest in these assets is limited to a value of $100,000. Based on these facts, the chapter 7 trustee maintained that Watson's Plan was property of the estate and that his exemption was limited to a maximum amount of $100,000. Accordingly, the trustee filed an objection to Watson's claim of exemption on October 5, 1995.

On November 20, 1995, the date of the hearing on the trustee's objection to Watson's claim of exemption, Watson filed an opposition to the trustee's objection. In his opposition and at the hearing, Watson asserted that the pension plan was excluded from the estate under § 541(c)(2) because it was subject to the provisions of ERISA. At the conclusion of the hearing, the bankruptcy court set a briefing schedule and ordered that an evidentiary hearing be held on January 12, 1996 to consider the status of Watson's Plan as an asset of the estate as well as any issues related to his claimed exemptions.

Pursuant to the bankruptcy court's scheduling order, supplemental points and authorities were submitted by Watson and the trustee, and the legal and factual issues were presented to the bankruptcy court at the January 12, 1996 hearing. At the conclusion of the hearing, the bankruptcy court invited all the interested parties to submit additional briefs on various issues. Pursuant to the court's direction, additional supplemental briefs were filed by Watson, his former spouse, the trustee, and Central Bank, an unsecured creditor.

On February 13, 1996, the bankruptcy court entered its decision entitled Opinion, Decision and Orders Re: Contested Motions Heard January 12, 1996. The order resolved numerous pending disputes including whether the Plan was ERISA-qualified. The bankruptcy court held that the Plan was property of the estate under § 541(c)(2) because it was not ERISA-qualified and determined that Watson was entitled to a total exemption of

$100,000 pursuant to state law. The bankruptcy court concluded that the Plan was not ERISA-qualified because it never provided benefits to "Employees" as defined by the Secretary of Labor and never had "Participants" and, thus, could not be an "Employee Benefit Plan" protected by the provisions of ERISA.

On March 11, 1996, Watson filed a motion for reconsideration of the bankruptcy court's decision to include the Plan as property of the estate and argued that the regulations of the Department of Labor defining the term "Employee" exceeded the congressional grant of authority provided by ERISA. Watson further argued that the application of the law violated his right of equal protection under the United States Constitution.

On April 26, 1996, the bankruptcy court granted Watson's motion to reconsider, however, the court reaffirmed its prior decision. The court held that the regulations of the Department of Labor did not exceed the scope of ERISA and that the equal protection cases relied upon by Watson were distinguishable and inapplicable. Appellant then filed a notice of appeal of the bankruptcy court's decision to include the Plan as property of the estate on May 3, 1996.

## II. ISSUES

A. Whether the debtor's interest in the Plan constitutes property of the estate because it does not include an anti-alienation provision that is enforceable under applicable non-bankruptcy law.

B. Whether the application of the law in this case deprived the debtor of his due process or equal protection rights under the United States Constitution.

## III. STANDARD OF REVIEW

Findings of fact of the bankruptcy court are reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo*. *In re Tucson Estates Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990); *see also* Fed. R. Bankr.P. 8013.

## IV. DISCUSSION

A. *Whether The Debtor's Interest In The Plan Constitutes Property Of The Estate Because It Does Not Include An Anti–Alienation Provision That Is Enforceable Under Applicable Non–Bankruptcy Law*

■ Watson maintains that the Plan is excluded from the estate pursuant to § 541(c)(2) because the Plan contains a restriction on the transfer of Watson's beneficial interest that is enforceable under the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001 *et seq.*

Watson relies upon a broad interpretation of *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), for the proposition that any beneficial interest in any tax qualified pension or profit sharing plan pursuant to § 541(c)(2) is excluded from the property of the estate.

In *Shumate*, the Supreme Court held that an anti-alienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for the purposes of § 541(c)(2). *Shumate*, 504 U.S. at 756–60, 112 S.Ct. at 2244–48. The Court concluded that "a debtor's interest in an ERISA-qualified pension plan may be excluded from property of the bankruptcy estate pursuant to section 541(C)(2)." *Id.* at 765, 112 S.Ct. at 2250.

■ Unlike the present case, it was undisputed in *Shumate* that the plan at issue was ERISA-qualified. The Court in *Shumate* did not specify what constituted an ERISA-qualified plan. *Shumate* is noteworthy for concluding that the term "applicable nonbankruptcy law" under § 541(c)(2) encompasses any relevant nonbankruptcy law, including federal law. *Id.* at 759, 112 S.Ct. at 2247. Since provisions contained in pension plans subject to ERISA are enforceable, ERISA constitutes "applicable nonbankruptcy law" for purposes of the § 541(c)(2) exclusion. Accordingly, an ERISA-qualified pension plan does not constitute property of the estate. *See In Reed*, 985 F.2d 1026, 1027 (9th Cir.1993).

1. *The anti-alienation provision in the Plan is not enforceable under ERISA*

■ After *Shumate,* several courts have interpreted *Shumate*'s holding to be limited in its application to ERISA-qualified plans. In *In re Orkin,* 170 B.R. 751, 753 (Bankr. D.Mass.1994), the bankruptcy court found that a plan was ERISA-qualified, so as to be excluded from the estate, only if it complies with requirements of both ERISA and the Internal Revenue Code. *Id.* at 754. The court ruled that a debtor, who was employer, sole employee, and sole participant under the plan could not qualify as an "employee" under ERISA. *Id.*

*Orkin* is factually similar to the instant case. In *Orkin,* the debtor was the sole proprietor of a real estate business. He established a retirement plan, under the terms of which he was the employer, sole employee, and sole participant. The court found that the debtor's interest under the plan was not ERISA-qualified, following the First Circuit case of *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957 (1st Cir.1989), which specifically held that a person functioning as an employer could not be covered as an employee under ERISA:

> Since Kwatcher is an "employer" under 29 U.S.C. § 1002(5), pension payments to him would "become of advantage to [an] employer," thereby violating the law.

*Kwatcher,* 879 F.2d at 960 (citations omitted).

In the instant case, Watson was the employer, sole employee, and sole participant of the pension plan and therefore is not considered an "employee" for ERISA purposes. The bankruptcy court relied upon the factually similar case of *In re Witwer,* 148 B.R. 930 (Bankr.C.D.Cal.1992), *aff'd,* 163 B.R. 614 (9th Cir. BAP 1994), which held that James J. Witwer, M.D., as the sole shareholder of James J. Witwer, M.D., Inc., a California corporation and its only employee and beneficiary, could not declare the Profit Sharing Plan as ERISA-qualified because of the definition of "employee" as set forth by the Secretary of Labor. The court in *Witwer* concluded that since the Secretary of Labor is vested with policy making power, its authority to supplement ERISA with regula-

tions is afforded considerable deference. *See Sure–Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 891, 104 S.Ct. 2803, 2808, 81 L.Ed.2d 732 (1984).

*Witwer,* like *Orkin,* relied upon *Kwatcher,* in which the sole shareholder of a corporate employer sued the administrator of an ERISA-qualified pension plan for collection of benefits, and in which the court held that a sole shareholder who was employed by a corporation he owns could not be permitted to participate in an ERISA plan because a "participant" must be an employee, not one who wholly owns the corporation. The bankruptcy court in *Witwer* noted that:

> ERISA defines "participant" as a present or former employee of an employer. 29 U.S.C. § 1002(6) (1988). The Secretary of Labor ("Secretary"), pursuant to authority granted in 29 U.S.C. § 1135 (1988), has limited the definition of employee as follows:
>
> (b) *Plans without Employees.* For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than apprenticeship or other training program, under which no employees are participants covered under the plan as defined in paragraph (d) of this section. . . .
>
> (c) *Employees.* For purposes of this section:
>
> (1) An individual and his or her spouse shall *not* be deemed to be employees with respect to a trade or business, *whether incorporated or unincorporated,* which is wholly owned by the individual or by the individual and his or her spouse . . .

*Witwer,* 148 B.R. at 935 (citing 29 C.F.R. § 2510.3–3(b), (c)(1) (1988)) (emphasis added in original). Therefore, Watson, like Dr. Witwer, cannot be considered an "employee" for purposes of ERISA because of the Secretary of Labor's limitation pursuant to 29 C.F.R. §§ 2510.3–3(b) and (c)(1) which disallows plans without employees and disallows owners of a business from being considered employees.

Although the bankruptcy court in *Witwer* found that the debtor's profit-sharing plan was exempted from the estate, the decision

was based upon that state's, i.e., California's, exemption law for profit-sharing plans. The *Witwer* court found that the plan was not ERISA-qualified and did not qualify as a spendthrift trust under California law due to the excessive control available to the debtor and, therefore, it was not excludable from the bankruptcy estate. Under California law, a private retirement plan does not need to be ERISA-qualified to be exempt from claims of creditors despite an invalid anti-alienation provision in the plan.

The Ninth Circuit has addressed the ERISA-qualified issue now before us in *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir.1991), in which a company set up a retirement plan intending for it to be governed by ERISA and subject to favorable tax treatment under the Internal Revenue Code. A fidelity bond was issued to protect the plan from employee dishonesty as required by ERISA. The plan suffered substantial losses due to transactions accomplished by an investment advisor that were alleged to be in violation of instructions from the owners of the company that set up the retirement plan. As a result, a demand was made on the bonding company, which denied coverage because it did not believe that the plan was governed by ERISA and, if ERISA had governed, applicable state law would not have provided coverage for the loss. Drake Kennedy, the plaintiff, had originally stated in a deposition that he and his brother were the only vested participants in the plan, however, the debtors later offered a declaration by the plaintiff stating that he had erred in his deposition testimony and that another employee was also a vested participant. The court rejected Kennedy's affidavit and summary judgment was granted in favor of the insurer.

The Ninth Circuit reversed summary judgment because it held that the district court should have determined whether the owner/trustee of the plan had contradicted prior testimony to create an issue of fact. The Ninth Circuit stated that if the two owner/trustees of the plan were the only beneficiaries, then the plan could not qualify under ERISA. The Ninth Circuit relied upon the holding of *Schwartz v. Gordon*, 761 F.2d 864, 867–69 (2nd Cir.1985), in making its decision.

In *Schwartz*, a self-employed physician who was the sole contributor and beneficiary of a "Keogh" retirement plan brought suit against a bank, stock brokerage firm, and stock broker for breach of fiduciary duty under ERISA in the management of his "Keogh" pension account. The Second Circuit held that fiduciary duties imposed by ERISA did not apply to "Keogh" retirement plans maintained by self-employed individuals who were sole contributors and beneficiaries of such an account. The Second Circuit agreed with the lower court's holding that the account did not meet the definition of an "employee benefit plan" found in Title I.

*Schwartz* provided that the "Keogh" plans under which only partners or only a sole proprietor are covered are not covered under Title I:

> A self-employed individual who voluntarily decides to set aside a portion of his income for his own retirement, unlike a worker employed by another, has complete control over the amount, investment and form of the fund created by him for his retirement. The remedial scheme established by Title I for workers employed by others was therefore not necessary for the protection of self-employed persons, and Congress accordingly has not changed the definition of "employee" in that Title to include self-employed persons....
>
> Thus the legislative history supports the distinction drawn by the Secretary of Labor between the definition of "employee benefit plan" as used in Title I for protection of workers employed by others and the definition of the term as used in Title II to insure tax benefits on an equal basis to self-employed individuals and others with respect to their retirement funds.

*Schwartz*, 761 F.2d at 868.

In the instant case, Watson was the sole shareholder in his profit-sharing Plan and sole beneficiary of the Plan and there were no other employees that were participants in the Plan. Watson's Plan was not an "employee benefit plan" because no "employees" benefited from the Plan, thus, Watson cannot exclude his Plan from the estate.

Indeed, in another similar case, *In re Lowenschuss,* 202 B.R. 305 (Bankr.D.Nev.1996), the court held that a husband's pension plan, in which he was the sole participant, was not excludable for the purposes of § 541 and was property of the estate. The court in *Lowenschuss* cited to *Kennedy v. Allied Mutual Insurance Co.,* 952 F.2d 262, 266 (9th Cir. 1991), stating that the Ninth Circuit Court of Appeals agreed with the District Court for the Central District of California that "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." *Kennedy,* 952 F.2d at 264. Even if a debtor had previously taken great care to insure that a pension plan was qualified for favorable tax treatment under the Internal Revenue Code, it has been repeatedly held that single participant plans are not ERISA-qualified. *In re Watson,* 192 B.R. 238, 242 (Bankr.D.Nev.1996); *Orkin,* 170 B.R. at 754.

The Supreme Court, in *Shumate,* described ERISA's goals as one of ensuring that a worker receives his or her pension benefits. *Shumate,* 504 U.S. at 764–65, 112 S.Ct. at 2249–50. In *Witwer,* the bankruptcy court noted that ERISA was adopted to remedy the abuses that existed in the handling and management of welfare and pension plan assets held in trust for workers in a traditional employer-employee relationship and, further, since the plan assets are held for the exclusive benefit of participants and beneficiaries, plan assets are not to inure to the benefit of the employer. *Witwer,* 148 B.R. at 935–36.

■ Watson argues that because his Plan qualified for tax deferred status under the Internal Revenue Code, it is ERISA-qualified and the anti-alienation provision is enforceable, citing *In re Harline,* 950 F.2d 669, 673 (10th Cir.1991), *cert. denied sub nom. Gladwell v. Harline,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992). The *Harline* decision predated the Supreme Court decision in *Shumate.* In *Harline,* Dr. Harline was the sole shareholder, the sole remaining beneficiary of the plan, and sole member of its deferred compensation committee. The Tenth Circuit agreed with the lower court's holding that the profit sharing trust did not qualify as a spendthrift trust because the trust was self-settled and as the single member of the trust's deferred compensation committee and the sole shareholder of the corporation, Harline had complete dominion over the trust property. Although *Harline* did state in *dicta* that if the plan were tax-qualified, it would be excluded from the bankruptcy estate pursuant to § 541(c)(2), it never reached this issue because the record was incomplete and the case was remanded to determine if the plan was ERISA-qualified. *Harline* was decided before *Shumate* and determined that the Tenth Circuit would join the Third, Fourth, and Sixth Circuits in holding that a tax-qualified ERISA pension or profit sharing plan is exempt from the bankruptcy estate under § 541(c)(2). The Tenth Circuit in *Harline* perceived no ambiguity in the phrase "applicable nonbankruptcy law" that would preclude the inclusion of federal law along with state law.

*Watson's* reliance on *Harline,* however, is misguided in light of the development of case law after *Harline* that does not consider owners to be employees. Bankruptcy courts have consistently held that retirement plans such as the one at issue here are not ERISA-qualified and are therefore property of the debtor's estate because the debtor is the employer and also the sole plan participant. *Orkin,* 170 B.R. at 754; *Kwatcher,* 879 F.2d at 958 n. 2.

2. *The regulations of the Secretary of Labor do not exceed the congressional grant of authority provided for by ERISA*

a. *ERISA's definition of employee and Congress' delegation of authority to the Secretary Of Labor*

■ ERISA defines a "participant" as an employee who is eligible to receive benefits of any type from an employee benefit plan. *See Witwer,* 148 B.R. at 935, 29 U.S.C. § 1002(7) (1994). ERISA provides that an employee is "any individual employed by an employer." 29 U.S.C. § 1002(6). An "employee benefit plan" is any plan established or maintained "by an employer or employee organization." 29 U.S.C. § 1002(1). The above-stated definitions support a conclusion which would require the employer and em-

ployee to be separate entities, particularly when read in light of the interpretation the terms have been given by the Department of Labor. *See Meredith v. Time Ins. Co.*, 980 F.2d 352, 356 (5th Cir.1993).

The regulations clarify what otherwise would be an interpretive quagmire. *Id.* The Department of Labor, acting pursuant to its expressed rule making authority pursuant to 29 U.S.C. § 1135[2] has issued interpretive regulations which shed considerable light on the meaning to be ascribed to employee, employer, and employee welfare benefit plans. *Id.* They declare certain types of plans beyond ERISA's scope. The Department of Labor defines "employee benefit plan" to exclude "plans without employees:"

> [T]he term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship, or other training program, under which no employees are participants covered under the plan....

29 C.F.R. § 2510.3–3(b) (1992); *see also supra* text p. 602.

The section goes on to clarify ERISA's definition of employee by declaring that:

> [A]n individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse.

§ 2510.3–3(c)(1). Accordingly, these regulations clearly prevent an employer from simultaneously being an employee. *Meredith*, 980 F.2d at 357.

Watson argues that because these definitions exclude his Plan from the scope of ERISA, the regulations promulgated by the Secretary of Labor are unenforceable be-cause the regulations exceed the scope of the provisions of ERISA. We disagree.

■ Congress intended in ERISA to delegate to the Secretary of Labor broad policy-making discretion in the promulgation of regulations to "fill in the gaps" with respect to the finite definition of employer and employee under the statute. *Id.* The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and making of rules to fill any gap left, implicitly, or explicitly, by Congress. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. *Id.* at 843–44, 104 S.Ct. at 2781–82. The Supreme Court has long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. *Id.* at 844, 104 S.Ct. at 2782–83.

■ Congress delegated broad authority to the Secretary of Labor to publish regulations under ERISA. 29 U.S.C. § 1135. *Guidry v. Sheet Metal Workers Intern. Ass'n. Local No. 9*, 10 F.3d 700, 708 (10th Cir.1993). Since the Secretary [of Labor] is vested with policy making power, its authority to supplement ERISA with regulations is afforded considerable deference.[3] *Witwer*, 148 B.R. at 935 (citing *Sure–Tan, Inc. v. National Labor Relations Board*, 467 U.S. 883, 891, 104 S.Ct. 2803, 2808, 81 L.Ed.2d 732 (1984)). The court may not substitute its interpretation for that of the Secretary so long as the Secretary's regulation is "reason-

---

**2.** Section 1135 provides in pertinent part:
   **29 U.S.C. § 1135. Regulations**
   [T]he Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter....

**3.** The First, Second, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits have reviewed ERISA and the regulations promulgated by the Department of Labor and concluded that the result reached by the Department of Labor regarding the definition

of employer and employee under the statute was permissible. *Kwatcher v. Mass. Service Emp. Pension Fund*, 879 F.2d 957 (1st Cir.1989); *Schwartz v. Gordon*, 761 F.2d 864 (2d Cir.1985); *Meredith v. Time Ins. Co.*, 980 F.2d 352 (5th Cir.1993); *Giardono v. Jones*, 867 F.2d 409 (7th Cir.1989); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir.1991); *Peckham v. Board of Trustees of Intern. Brotherhood of Painters and Allied Trades Union*, 653 F.2d 424 (10th Cir. 1981), *modified*, 724 F.2d 100 (1983).

ably defensible." *Sure–Tan,* 467 U.S. at 891, 104 S.Ct. at 2808.

### b. *ERISA's purpose is to protect employees*

The Department of Labor has adopted an interpretation consistent with ERISA's primary objective to safeguard the well-being and security of working men and women and to appraise them of their rights and obligations under an employee benefit plan. *See* 29 U.S.C. § 1001. When the employer and employee are the same, there is little need to regulate plan administration.

■■■ ERISA was enacted to remedy abuses that existed in pension plans in the traditional employer-employee relationship. ERISA's framers were concerned that employers would exploit, misuse, or loot the huge reserves of funds collected for employee benefit plans. *H.R.Rep. No.* 93–807 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4670, 4681; *S.Rep. No.* 93–383 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4892. Employees were vulnerable to abuse due to the lack of control and understanding required to manage pension funds created for their benefit. ERISA was *not* enacted to benefit retirement plans of professional corporations with single employees:

> Since the assets of the employee benefit plan are to be held for the exclusive benefit of participants and beneficiaries, plan assets generally are not to inure to the benefit of the employer.

*H.R. Conf. Rep..* No. 93–1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5083.

The legislative history of ERISA provides that ERISA was enacted to protect the interests of employees:

> [T]he Committee recognizes the absolute need that safeguards for plan participants be sufficiently adequate and effective to prevent the numerous inequities to workers under plans which have resulted in tragic hardship to so many.
>
> The Bill reported by the Committee represents an effort to strike an appropriate balance between the interests of employers and labor organizations in maintaining flexibility in the design and operation of

> their pension programs,ˊ *and the need of the workers for a level of protection which will adequately protect their rights and just expectations.*

H.R.Rep. No. 93–533 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4647 (emphasis added).

### c. *Secretary Of Labor's authority to enforce the provisions of ERISA*

The enforcement provisions of ERISA have been designed specifically to provide both the Secretary of Labor and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. *See* 29 U.S.C. §§ 1131–1204.

The legislative history of ERISA provides that Congress delegated to the Secretary of Labor the authority to enforce the provisions of ERISA:

> The Committee believes it is essential to concentrate in the Secretary of Labor sufficient powers to effectively implement the provisions of this Act with the minimum amount of duplication and overlapping of functions.

*S. Rep. No.* 93–127 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4851.

H. Rep. No, 93–533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4664–65 further provides:

> Title V. General Provisions [referring to Part 5 of ERISA, Administration and Enforcement, 29 U.S.C. §§ 1131–45]
>
> Section 503. Enforcement.
>
> This section would give the Secretary [of Labor] authority to conduct such investigations as may be necessary to determine whether any person has violated or is about to violate any provisions of title II or title III or any rules or regulations which would result from enactment of titles II and III . . . Civil actions by the Secretary [of Labor], participants or beneficiaries to enforce the provisions of the Act are authorized in Federal Court.
>
> . . . .
>
> Section 505. Rules and regulations
>
> This section would authorize the Secretary [of Labor] to prescribe such rules and

regulations as he finds necessary to carry out the provisions of the Act.

In *Witwer,* the bankruptcy court found that the regulations promulgated by the Secretary of Labor were valid because they were reasonably related to the provisions of ERISA. *Witwer,* 148 B.R. at 936 (citing *Schwartz v. Gordon,* 761 F.2d 864, 868 (2d Cir.1985)). We note additionally that, as provided above, Congress specifically delegated to the Secretary of Labor the authority to enforce the provisions of ERISA. *See* 29 U.S.C. §§ 1131–45.

Therefore, the present facts support the bankruptcy court's finding in this case that the regulatory definition of employee set forth by the Secretary of Labor is consistent with the statutory definition of "employee" in ERISA, as construed by the Supreme Court in *Shumate.*

B. *Whether The Application Of The Law In This Case Deprived The Debtor Of His Due Process Or Equal Protection Rights Under The United States Constitution*

▆▆ Watson's claims that his due process and equal protection rights were violated are without·merit. The applicable constitutional standard of review will determine the extent to which the bankruptcy court will independently review and scrutinize the legislative line-drawing in the establishment of the applicable classification. Generally, as long as the lawmakers have a "rational basis" for creating the classification in economic and general social welfare legislation, and the classification does not affect a "suspect class," the court will not invalidate the law. *See, e.g., Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Dandridge v. Williams,* 397 U.S. 471, 484–85, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970).

Watson has not shown that he is a member of a "suspect class" nor has he shown that there is no rational relationship of the regulations to a legitimate governmental purpose. The legislation is economic in nature and the numerous cases discussed above establish that the purpose of ERISA was to protect employee retirement benefits from the reach of persons in control of these retirement funds. No protection is required if the person in control of the funds is also the benefi-

ciary of the funds, and the exclusion of such retirement savings from the scope of ERISA is rationally related to a legitimate governmental purpose.

## V. CONCLUSION

▆▆ The debtor's Plan was not ERISA-qualified because the debtor was the owner, sole employee, and sole participant of the Plan and, as such, did not meet the definition of "employee" under ERISA. The Secretary of Labor's regulatory definition of employee is consistent with the statutory definition of "employee" in ERISA which provides that owners do not qualify as employees under ERISA. The Plan is property of the estate and its anti-alienation provision is not enforceable under applicable nonbankruptcy law. The debtor's Plan is therefore subject to Nevada's exemption law and is exempt to the amount of $100,000.

The debtor's due process or equal protection rights were not violated by the ERISA regulation because it was rationally related to a legitimate government purpose, i.e., the protection of employee retirement funds from the reach of persons in control of these funds.

Accordingly, we AFFIRM.